UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE LENOIR WILLIAMS, | |
| Plaintiff, | |
| -against- | 1:23-CV-2348 (LTS) |
| SOCIAL SECURITY ADMINISTRATION; LESLIE BETTS; CAREN UNGER, | ORDER TO AMEND |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Nicole Lenoir Williams, of New York, New York, filed this *pro se* action

asserting claims of race, color, national origin, disability, and age-based employment

discrimination, as well as claims of retaliation, under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967 ("ADEA"),

the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990 ("ADA"), and the

New York State and City Human Rights Laws ("NYSHRL" & "NYCHRL"). She sues: (1) her

former employer, the Social Security Administration ("SSA"); (2) her former SSA supervisor,

Leslie Betts; and (3) an SSA Operations Support Branch Chief, Caren Unger. Plaintiff's claims

arise from the alleged discrimination and retaliation she experienced while she was employed at

an SSA facility in Jamaica, Queens County, New York. Plaintiff's amended complaint is the

operative pleading for this action. (ECF 5.)

By order dated April 10, 2023, the Court granted Plaintiff's request to proceed *in forma*

*pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court

grants Plaintiff leave to file a second amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine

2

whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff's allegations in the text of her amended complaint are not very clear. While they do provide the Court with some information about the nature of Plaintiff's claims, they are difficult to understand. Plaintiff has attached to her amended complaint, however, many documents that paint a clearer picture of the alleged events that are the bases for her claims. Thus, the Court will recount the allegations made in both the amended complaint itself and in its attachments.

**A.      Allegations made in the amended complaint**

In her amended complaint, Plaintiff does not specify her national origin, but states that she is Black, was born in 1970, and suffers from "heart disease [and] heart failure." (ECF 5, at 4.) Plaintiff also does not specify her former position with the SSA or the date(s) on which the events that are the bases for her claims took place. Plaintiff does allege, however, that her "supervisor breached the code of ethics by her mistreatment towards [Plaintiff] verbally and in false documentation and refer[r]ing to [Plaintiff's] disability." (*Id.* at 2.)

Plaintiff asserts that she "was hired as a schedule A letter when [she] put in for a special accommodation management put in a request for direct denial [*sic*]." (*Id.*). Plaintiff also alleges that her supervisor "would not train [her] on the information [she] needed like [her] counterparts so that [she] could also have the privileges as other coworkers." (*Id.*) Plaintiff further alleges that her supervisor "misconstrued all information as well as documentation to cause [Plaintiff's] termination." (*Id.*)

Plaintiff states that when she "asked about [what was happening, she] was told to just consent on [her] heart[,] she had a conversation with management and other coworkers speaking

of [her] in an ill way [*sic*]." (*Id.*) Plaintiff asserts that when she then "went to speak to [the] Commissioner[,] [she] was reprimand[ed] and asked why [she] went upstairs only later to be told [she] was fired terminating [her] employment under fake pretenses [*sic*]." (*Id.*)

Plaintiff alleges that the defendants discriminated against her by failing to accommodate her disability, by harassing her or creating a hostile work environment, and by terminating her employment, and that they also retaliated against her. She further alleges that she filed discrimination charges in December 2022 and in January 2023, and that the United States Equal Employment Opportunity Commission ("EEOC") issued a notice of right to sue to her on March 3, 2023, which she received on that same date. Plaintiff seeks damages and reinstatement.

**B.    Allegations derived from the attachments to the amended complaint**

The allegations derived from the attachments to the amended complaint assert the following: On January 18, 2022, Plaintiff was hired as an Intake and Scan Clerk at the SSA's facility in Jamaica, Queens County, New York. She suffers from congestive heart failure, and receives Social Security Disability Insurance ("SSDI") and Medicare benefits. In January 2022, Plaintiff informed her supervisor, Betts, about her disability. Betts made a racially charged comment and treated Plaintiff differently than her other coworkers with regard to Plaintiff's disability. Plaintiff requested what she described as a reasonable accommodation with respect to her disability – to have her full-time status reduced to part-time status so that her income would not exceed the Significant Gainful Activity (SGA) limit such that she would no longer be eligible for SSDI and Medicare benefits. The SSA denied her request.

During the morning of Thursday, May 12, 2022, Plaintiff requested leave without pay ("LWOP") for the rest of that day, the next day, Friday, May 13, 2022, and for Monday, May 16, 2022. In her email requesting such leave, she stated that she was not feeling well and that she was "still transitioning into working a full time position and balancing [her] disability. [She]

ha[d] been holding on to threads in order to maintain and come to work and be [her] best, but it [was] necessary to follow up with [her] doctors and get checked on a regular basis."[1] (ECF 5, at 129.) About that time, Plaintiff was receiving experimental treatment for her congestive heart failure at the Gagnon Cardiovascular Institute at the Morristown Medical Center, in Morristown, New Jersey.

On May 26, 2022, Plaintiff requested certain training from Betts, her supervisor, because Plaintiff had not been provided such training. On June 8, 2022, Plaintiff filed a discrimination charge. Nine days later, on June 17, 2022, Betts sent Plaintiff an email regarding her previous conversation with Plaintiff about incidents in which Plaintiff was found sleeping at work outside of her break periods; Plaintiff had told Betts that "it wasn't an issue with [her] medicine, in[asmuch] as it was an issue with [her] heart valve. [Plaintiff] stated that [she was] supposed to undergo surgery earlier [that] year, but . . . decided to start working [at the SSA] first." (*Id.* at 136.) Plaintiff also "stated [that she was] waiting to become a candidate for the surgery." (*Id.*) Betts advised Plaintiff about applying for a reasonable disability accommodation and about employee counseling, but warned her that further incidents could result in disciplinary action, including termination.

On July 14, 2022, Plaintiff went to a hospital's emergency room because she was experiencing chest pain.[2] Fifteen days later, on July 29, 2022, Plaintiff again went to a hospital's emergency room because of a fall she had suffered earlier during that week; x-rays were taken of

---

[1] The amended complaint's attachments do not specify whether that request for LWOP was granted.

[2] The amended complaint's attachments do not specify whether Plaintiff requested leave to go to the hospital and, if so, whether it was granted.

her elbow and knee.[3] On August 3, 2022, and again on August 18, 2022, Plaintiff went to a hospital for bloodwork, an echocardiogram, and to give other data, in preparation for surgery. One day later, on Friday, August 19, 2022, during the afternoon, Plaintiff requested LWOP for the remainder of the workday due an unspecified "emergency," stating that she was scheduled to "go into the hospital for a procedure [the next day, Saturday, August 20, 2022,] and [because she was scheduled to end work at 6:00 p.m.,] and [because] it [was] the weekend," it would be "entirely to[o] late to rectify" the unspecified emergency after work. (*Id.* at 141.) After leaving work, Plaintiff returned to work that afternoon, and she worked until 6:00 p.m. In response to Plaintiff's request, Betts informed Plaintiff that while she was able to adjust Plaintiff's break period to allow her to leave to rectify "a personal issue dealing with money," she warned Plaintiff that LWOP was only granted under specific conditions, which did not appear to include Plaintiff's circumstance, and that Betts would seek further guidance, but could not guarantee that Plaintiff's leave request would ultimately be granted.[4] (*Id.* at 142.)

Between August 23 and 24, 2022, Plaintiff was either treated or examined at a hospital in Morristown, New Jersey. Plaintiff called Betts on August 24, 2022, about returning to work that day, but Betts told her to stay home. Plaintiff returned to work two days later, on August 26, 2022, but she was "exhausted from the procedures." (*Id.* at 24.) She arrived at work at 6:30 a.m., and was not required to "sign in" until 9:30 a.m., but missed her alarm and signed in a few minutes late; she was accused of being absent without leave and of sleeping at her desk. (*Id.*).

---

[3] Again, the amended complaint's attachments do not specify whether Plaintiff requested leave to go to the hospital and, if so, whether it was granted.

[4] Plaintiff was ultimately charged with being absent without leave with respect to the August 19, 2022 incident.

On September 12, 2022, Plaintiff took the day off from work, with what appears to be approved leave, to attend doctors' appointments in preparation for her proposed surgery. Four days later, on Friday, September 16, 2022, Plaintiff's mother died. On Monday, September 19, 2022, Plaintiff informed Betts that her mother had passed away; three days later, on September 22, 2022, Plaintiff requested leave for between September 23, 2022, and September 30, 2022, to allow her to mourn her mother's passing, settle her mother's affairs, and to return to work on Monday, October 3, 2022. It is unclear whether that request was granted. Plaintiff also requested, and was granted, four hours of sick leave and four hours of LWOP to attend her mother's funeral on October 7, 2022.

On September 22, 2022, the same date that Plaintiff requested leave concerning her mother's passing, she got into an altercation with a security guard at the SSA facility where she worked. When she entered the building, she did not have her work identification. A security guard at the building told her, "'You don't work here. Go away.'" (*Id.* at 31.) The guard then ignored her. Plaintiff raised her voice and said, "'excuse me,'" in an effort to get the attention of another security guard. Plaintiff's supervisor, Betts, was in the building lobby, and witnessed the incident. Later that day, Plaintiff went to the office of the Assistant Regional Commissioner to speak to him; he told her that he was busy and to return the next day. When Plaintiff returned to her own office, Betts reminded her about addressing problems through the proper channels, and that she had to speak with Betts or Betts's supervisor before speaking with the Assistant Regional Commissioner. Plaintiff heard Betts speak unkindly of her while Betts was on the phone with Unger.

When Plaintiff returned to work from leave on October 3, 2022, Betts and Betts's supervisor spoke to her about her being disrespectful to the security guard on September 22,

2022, and on previous occasions. Plaintiff tried to explain that she raised her voice in order to get the attention of another security guard who recognized her and could vouch that she worked there; she also explained that she went to the office of the Assistant Regional Commissioner to ask for additional leave because she was having a difficult time with her mother's death, and because, at that time, neither Betts nor her supervisor were available. Plaintiff attended her mother's funeral on October 7, 2022. Five days later, on October 12, 2022, Plaintiff was charged with being late to work.

On November 7, 2022, Plaintiff was informed that she was fired. In a letter from Unger dated November 7, 2022, Unger informed Plaintiff that she was being terminated during her probationary period due to her "discourteous conduct" and her absences without leave ("AWOL") (*Id.* at 8.) Unger noted Plaintiff's discourteousness with a security guard and with the Assistant Regional Commissioner on September 22, 2022. Unger further noted that Plaintiff had been charged with being AWOL for one hour on August 19, 2022, and with being AWOL for one quarter hour on August 26, 2022, and again on October 12, 2022. Plaintiff unsuccessfully sought alternative dispute resolution to resolve her claims with the SSA. On March 3, 2023, the SSA informed Plaintiff that because her dispute with the SSA had not been resolved, she had the right to file a formal EEOC complaint.

An attachment to Plaintiff's amended complaint asserts that Betts "did things to [Plaintiff] that were wrong defamatory treatment that caused [Plaintiff] [*sic*] her position at [the SSA]." (*Id.* at 25.) Betts "used [Plaintiff's] disability against [her; Betts] was unfair to [her and] did not treat [her] equally." (*Id.*) Betts also "painted [Plaintiff] in a negative light by leaving out details and information in her documentation of events and . . . she didn't document the truth but

exaggerated a lie about what happened when [Plaintiff] went up and spoke with the" Assistant

Regional Commissioner. (*Id.*)

## DISCUSSION

### A.    Claims under 42 U.S.C. § 1981, ADA, and the NYSHRL and NYCHRL

Because Plaintiff asserts claims of discrimination and retaliation arising from her federal

employment with the SSA, the Court must dismiss her claims under 42 U.S.C. § 1981, the ADA,

and the NYSHRL and NYCHRL. Because Title VII is the exclusive judicial remedy for claims of

race or color-based discrimination in federal employment, Section 1981 is not available as a

remedy for such discrimination in federal employment. *Brown v. GSA*, 425 U.S. 820 (1976). The

same is true with respect to related claims of retaliation under Section 1981. *See Bumpus v.*

*Runyon*, No. 94-CV-2570, 1997 WL 154053, at *3-4 (S.D.N.Y. Apr. 2, 1997) ("Federal courts

have repeatedly followed *Brown* in holding that employment . . . discrimination and related

retaliation claims made by [current or former] federal employees based on various statutes are

preempted by Title VII."), *aff'd*, 152 F.3d 917 (2d Cir. 1998). Relief under the NYSHRL and the

NYCHRL, which are state and municipal statutes, respectively, is also unavailable to persons

asserting claims of discrimination and retaliation arising from federal employment. *See, e.g.*,

*Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998); *Song v. Becerra*, No. 22-CV-9678, 2022

WL 17618485, at *1 (S.D.N.Y. Dec. 13, 2022); *Perkins v. United States Dep't of the Treasury*,

No. 18-CV-8911, 2022 WL 19772, at *16; (S.D.N.Y. Jan. 3, 2022); *Malloy v. Pompeo*, Nos. 18-

CV-4756, 19-CV-6533, 2020 WL 5603793, at *9 (S.D.N.Y. Sept. 18, 2020).

"[A current or former] federal employee . . . has no remedy for employment

discrimination [based on disability] under the ADA. [Her] sole claim for discrimination on the

basis of disability is under the Rehabilitation Act. . . ." *Rivera*, 157 F.3d at 103 (citing 42 U.S.C.

§ 12111(5)(B)). "[A current or former] federal employee . . . may seek relief for . . . [related]

retaliation solely through . . . the Rehabilitation Act. . . ." *Carter v. Porter*, No. 06-CV-3854, 2007 WL 879417, at *4 (E.D.N.Y. Mar. 22, 2007).

Accordingly, the Court dismisses Plaintiff's claims under Section 1981, the ADA, and the NYSHRL and NYCHRL for failure to state a claim on which relief may be granted.[5] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.      Proper defendant for claims under Title VII, the Rehabilitation Act, and the ADEA**

The Court must dismiss Plaintiff's claims under Title VII, the Rehabilitation Act, and the ADEA against Defendants Betts and Unger. Title VII does not provide for claims against individual employees. *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). The same is true as to claims under the Rehabilitation Act and the ADEA. *See Shaw v. USPS*, No. 09-CV-6617, 2010 WL 3749233, at *13 (S.D.N.Y. Aug. 16, 2010) (discussion in the context of claims under Title VII, the Rehabilitation Act, and the ADEA raised by a former employee of the United States Postal Service), *report & recommendation adopted*, 2010 WL 3767115 (S.D.N.Y. Sept. 27, 2010). The Court therefore dismisses Plaintiff's claims under Title VII, the Rehabilitation Act, and the ADEA against Betts and Unger for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

The proper defendant for such claims brought by a current or former federal employee is the head of the relevant agency, *see* 42 U.S.C. § 2000e-16(c) (Title VII); 29 U.S.C. § 794a(a)(1) (Rehabilitation Act adopts Title VII's remedial and procedural scheme); *Torres v. United States Dep't of Veterans Affairs*, No. 02-CV-9601, 2004 WL 691237, at *2 (S.D.N.Y. Mar. 31, 2004) (discussion in the context of Title VII, the Rehabilitation Act, and the ADEA). Such claims

---

[5] Plaintiff's claims of race, color, and disability discrimination, as well as her claims of related retaliation, can be considered by the Court under Title VII and the Rehabilitation Act.

should not be asserted against the agency itself, *see DiPompo v. West Point Military Acad.*, 708 F. Supp. 540, 546-47 (S.D.N.Y. 1989) (discussion in the context of Title VII and the Rehabilitation Act); *see also Thomas v. Dep't of Veterans Affairs*, No. 05-CV-5348, 2006 WL 1636738, at *6 (S.D.N.Y. Apr. 3, 2006) ("Although the ADEA does not expressly designate who the proper defendants are in an ADEA action, and neither the Supreme Court nor the Second Circuit have addressed the issue, the weight of authority holds that the head of the federal agency is the only proper defendant.") (citation omitted), *report & recommendation adopted*, 2006 WL 1594481 (S.D.N.Y. June 6, 2006). The Court therefore also dismisses Plaintiff's claims against the SSA, under the doctrine of sovereign immunity, *see* 28 U.S.C. § 1915(e)(2)(iii), and, consequently, for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), but grants Plaintiff leave to file a second amended complaint in which she names the head of the SSA, Acting Social Security Commissioner Kilolo Kijakazi, as the sole defendant in this action.[6]

## C.   Claims of discrimination under Title VII, the Rehabilitation Act, and the ADEA

Title VII prohibits an employer from discriminating against an employee because of the employee's race, color, religion, sex, or national origin. *See* 42 U.S.C. §2000e-2(a). Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, "prohibits discrimination on the basis of disability in

---

[6] The doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, including suits against any part of the federal government, such as a federal agency, like the SSA, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."). "The United States has waived its sovereign immunity regarding employment discrimination claims only to the extent that such claims are made against the head of the department, agency or unit." *Coats v. Dep't of Veterans Affairs*, No. 04-CV-0491A, 2005 WL 2420354, at *4 (W.D.N.Y. Sept. 30, 2005); *see Mitchell v. Chao*, 358 F. Supp. 2d 106, 112-13 (N.D.N.Y. Mar. 2, 2005); *Morrongiello v. Ashcroft*, No. 01-CV-2524, 2004 WL 112944, at *3 (S.D.N.Y. Jan. 22, 2004).

employment decisions by the Federal Government." *Lane v. Pena*, 518 U.S. 187, 193 (1996); *see also Rivera*, 157 F.3d at 104-05 ("Congress explicitly made Title VII remedies available for violations of [S]ection 501 [of the Rehabilitation Act] . . . to obtain relief for . . . discrimination against a federal employee."). The ADEA "prohibits discrimination in employment on the basis of age against persons aged 40 or older." *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)); *see* 29 U.S.C. § 633a(a).

To state a claim of discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse employment action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

To state a claim of failure to provide a disability accommodation under the Rehabilitation Act, which the Court understands Plaintiff's amended complaint as asserting, a plaintiff must allege facts showing that: "(1) [the plaintiff] is a person with a disability under the meaning of [the Rehabilitation Act]; (2) an employer covered by the statute had notice of [the plaintiff's] disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (internal quotation marks and citation omitted, first alteration in original). For a claim under the ADEA, a plaintiff must allege facts indicating that her age was the but-for cause of the employer's adverse employment action. *See Vega*, 801 F.3d at 86 (quoting *Gross v. FBL Fins. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

As to her claims of discrimination under Title VII, Plaintiff alleges no facts showing that her race, color, religion, sex, or national origin was a motivating factor in any adverse employment action taken against her by her employer, including her termination. The Court assumes, for the purpose of this order, that Plaintiff is a person with a disability, as defined by the Rehabilitation Act.[7] With respect to her claims of discrimination brought under that statute, however, Plaintiff does not allege facts sufficient to show she could only have performed the essential functions of her job if her employer had provided her with a reasonable disability accommodation.[8] In addition, as to her claims of discrimination under the ADEA, Plaintiff alleges no facts showing that, but for her age, she would not have suffered an adverse employment action, including her termination. In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file a second amended complaint in which she alleges facts sufficient to state claims of employment discrimination under Title VII, the Rehabilitation Act, or the ADEA.

---

[7] For the purpose of claims of employment discrimination under the Rehabilitation Act, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(20)(B) (incorporating by reference the definition of "disability" in 42 U.S.C. § 12102(1) for claims of employment discrimination brought under the Rehabilitation Act).

[8] Plaintiff alleges no facts showing that she needed the accommodation that she requested – reduction to part-time status – to perform the essential functions of her job. It appears that she only requested such an accommodation in order to continue to receive SSDI and Medicare benefits. (ECF 5, at 31, 48, 51.) Thus, such a request, in the Rehabilitation Act context, was not for a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o)(1) ("The term reasonable accommodation means . . . (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, *that enable an individual with a disability who is qualified to perform the essential functions of that position*; or (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.") (emphasis added).

**D.      Claims of retaliation under Title VII, the Rehabilitation Act, and the ADEA**

Under Title VII's antiretaliation provision:

[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3(a). The ADEA has an almost identical antiretaliation provision. *See* 29 U.S.C. § 623(d). The Rehabilitation Act incorporates by reference the ADA's antiretaliation provision, which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful [under the Rehabilitation Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the Rehabilitation Act]." 42 U.S.C. § 12203(a) (ADA); *see* 29 U.S.C. § 794(d) (Rehabilitation Act).

To state a claim of retaliation under Title VII, a plaintiff must allege facts showing that: "(1) [the] defendant[] discriminated – or took an adverse employment action – against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting § 2000e-3(a)). "[F]or an adverse retaliatory action to be 'because' a plaintiff [opposed an unlawful employment practice], the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Id.* at 90-91 (internal quotation marks and citations omitted). The pleading requirements are the same for a claim of retaliation under the ADEA. *See, e.g.*, *Kopchik v. Town of Fishkill, N.Y.*, 759 F. App'x 31, 34-35 (2d Cir. 2018) (summary order) (quoting *Vega*, 801 F.3d at 90-91). To state a claim of retaliation under the Rehabilitation Act, a plaintiff must show that: "(i) [the] plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity;

(iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (internal quotation marks and citation omitted). Such a causal connection may be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (internal quotation marks and citation omitted).

With respect to her claims of retaliation brought under Title VII and the ADEA, Plaintiff alleges no facts showing that she suffered an adverse employment action because she opposed an unlawful employment practice. As to her claims of retaliation under the Rehabilitation Act, Plaintiff does not allege facts sufficient to show that there was a causal connection between her protected activity and any adverse employment action she suffered. In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file a second amended complaint in which she alleges facts sufficient to state a claim of retaliation under Title VII, the Rehabilitation Act, or the ADEA.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim of employment discrimination or retaliation under Title VII, the Rehabilitation Act, or the ADEA, the Court grants Plaintiff 60 days' leave to file a second amended complaint to detail her claims.

The Court grants Plaintiff leave to file a second amended complaint to name the proper defendant and to provide more facts about her claims. Plaintiff must name, in her second amended complaint, Acting Social Security Commissioner Kilolo Kijakazi as the sole defendant in this action. In the "Statement of Claim" section of the second amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim. She should include all of the information in the second amended complaint that she wants the Court to consider in deciding whether the second amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant persons;

b) a description of all relevant events, including what each person did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's second amended complaint should tell the Court: who violated Plaintiff's federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's second amended complaint will completely replace, not supplement, the original and amended complaints, any facts or claims that Plaintiff wants to include from the original and amended complaints must be repeated in the second amended complaint. The Court

strongly encourages Plaintiff to attach to her second amended complaint any documentation that she has received from the SSA or the EEOC regarding her right to sue.

## CONCLUSION

The Court grants Plaintiff leave to file a second amended complaint that complies with the standards set forth above. Plaintiff must submit the second amended complaint to this court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as a "Second Amended Complaint," and label the document with docket number 1:23-CV-2348 (LTS). An second amended complaint form for an employment discrimination action is attached to this order. No summonses will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the Court will dismiss this action; the Court will issue an order and judgment dismissing Plaintiff's claims against the SSA under the doctrine of sovereign immunity, and consequently, for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), as well as for seeking monetary relief from a defendant that is immune from such relief, *see* 28 U.S.C. 1915(e)(2)(B)(iii), and also dismissing the remainder of Plaintiff's claims for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates

good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   May 30, 2023
          New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge